So we'll call our last case, it's 24-2999, Jeffrey Steidle v. USLiabilityInsuranceCompanyInc. Good afternoon, Mr. Eli. Good afternoon, your honors. May it please the court, Wayne Ely for the appellant, Jeffrey Steidle. Your honors have focused us on three issues in this case in your October 30th order. Number one, does the Burlington Northern Standard apply to ADA or FMLA cases? Number two, I'm assuming you wanted to hear whether under that standard, would the denied bonuses 20 and 21 qualify as an adverse employment action? And finally, what is there here to show that there wasn't a legitimate non-discriminatory reason for limiting those bonuses? I'll start with the first one. I went back and looked and it looks like this court has actually considered, at least in the context of the ADA, applying the Burlington Northern Standard to retaliation claims. There was a case, I think, in 2017, Wells v. I don't believe we have a PO on this issue. A presidential opinion, correct? It was non-presidential. It was Wells v. Retinovitreous. I'm just proud I can pronounce Retinovitreous Associates. That was 2017. That was an MS patient with an ADA retaliation and they really didn't, it's sort of dicta in that case because they decided that regardless of what the standard was, she couldn't overcome the legitimate non-discriminatory reason. So there have been some district court cases as recently as last year. And the latest one I could find was Walls v. Miller's Edge by Judge Perez, noting that as far as FMLA retaliation, this court has never definitively adopted Burlington Northern. I'm kind of hoping you're going to do it in this case. That's what we're asking. Should we? Yes, you should. Tell us why. I was going to say. Tell us why. You knew I was going to say that. The ADA and FMLA are remedial statutes just like Title VII, and you can find dozens of cases that point out that remedial statutes should be interpreted broadly. It really doesn't make any sense to have one standard apply to Title VII retaliation and a different one apply in ADA or FMLA. So let's assume we agree with you. Go to the next step. The next step is you've got the denied bonuses in 2020 and 2021. Those bonuses... Let's just work backwards. 2021, the material adverse employment action was what, in May? Yes, the bonus in 2021, I believe, was May. But the 2020 was actually in the fall, and the timeline on the 2020... You don't... Yeah, you got... You're close temporally. I mean, we have said that beyond about three months is a real problem, and you don't have that problem in 20. You do have it in 21. But we have other evidence in 21. And what other evidence do you have? The other evidence is that the increase in case files, that it's undisputed based on... Ms. Helbig was the supervisor in 2021. What was the bonus, by the way? What was the salary increase in 2021? The 2021 was... I believe it was a few thousand dollars, but it's undisputed.  I'm sorry, Judge? That was in 2020. What was the same thing in 2021? Two and a half percent? Two and a half percent, right? Two and a half percent. And the bonus was 3K in 2020. Was it also the same in 2021? I believe it was a little more in 2021. Slightly more. But you've got... In 2021, you've got Ms. Helbig giving him more case files and then submitting a certification. Weren't they lesser, less intense or less complicated? The case files. The case files. Well, that's an issue of fact, I think the jury had to hear. Because it's undisputed, he was given many more files. And it's also undisputed based on Ms. Helbig's certification at Appendix 347. She indicated the reason for the 2021 bonus being lower was that his responsibilities were less. And when you have an increase in files on one hand, and someone claiming as your supervisor, you have less responsibility, I think that's an issue of fact. This was also, and I think he admitted, some administrative issues or... I think I would say administrative issues in not being as responsive as he could have been. There were some other issues that were ancillary that were raised. But I think the main one in the certification was less responsibility. But turning to the 2020, as Judge Ambrose already noted, that we do have some temporal proximity there. You've got, I believe, there was a review on 92820 where Ms. Lacey, who was the supervisor at that time, indicated that Mr. Steudle had had difficulties and struggles, was the exact word. And then he goes on FMLA leave a couple of days later. And the bonus is given in November. And it's undisputedly less, that's admitted. It's pretty clear, at least as to the 2020, that we've got causation. But I would submit we have it in 2021 as well. And what do you make of Ms. Lacey's explanations as to why the bonus is lower? I think, again, you've got the same issues as you have with Ms. Helbig. They were saying, oh, he's had struggles, he's had difficulty with administrative. I think some of the administrative was in 2020 as well. I think there's enough here, given the fact that we know Ms. Lacey knew about the disability. That's conceded. Mr. Steudle testified he had talked to her about it. She testified that she had never made a connection between the struggles in the review and his disability. I think a jury could easily find that not to be credible. And then she gives him the lower bonus while he's on FMLA, shortly after he goes out on it. I think there's more than enough there. And turning to the third point, which we kind of already mixed in with the second one, there is enough evidence here to show that there was a reason to disbelieve the employer's explanation for Mr. Steudle's getting the lower bonuses. What were the reasons to disbelieve? The reasons are the Helbig increase in files in 2021, and then Helbig saying, well, his responsibilities were less. I think he got significantly more files. They were less complicated, as Judge McKee pointed out, right? There were less complicated cases? They're arguing they were less complicated, but Mr. Steudle has testified that they were not. They took just as much, if not more, time. So that's an issue of fact, as well, for the jury that should be considered. It's also the court applied the wrong standard, didn't it, for retaliation claims? Well, that's one of the things we're arguing, and that was the first issue in Your Honor's October 30 order. Should the Burlington Northern standard be applied to ADA and FMLA cases of retaliation? I think it makes sense that it should. Obviously, I'm a plaintiff's employment lawyer. I'm going to say that. But I think it makes no sense to have the adverse employment action standard that was so much higher before Burlington Northern apply to certain discrimination claims, but not other ones. I don't think that's a matter of policy, or if you read the language of the statutes. I mean, actually, Title VII, Section 12117, indicates that discrimination on the basis of disability shall include the remedies and procedures of Title VII. So you could argue that that statute gives you authority to apply the Burlington Northern retaliation standard to ADA claims. But unless there's any other questions, I did mean to reserve two minutes for rebuttal. I apologize. I did. I have enough time left to still... Don't worry about it. I got a time bank. Time to... But unless there's any other questions... We're good. Thank you, Your Honors. Good afternoon, Your Honors. May it please the Court, I am Maria McGrogan on behalf of the United States Liability Insurance Company. I don't think there is a disagreement between the parties, in fact, that Burlington Northern should be the appropriate standard for... That's a good start. ...for a retaliation fix. So I don't know that I'm going to... I hope we can agree that he's entitled to some relief. Your Honors asked for support in terms of why that conclusion is the appropriate conclusion. Here, I think it's very clear that the District Court, in fact, did apply the Burlington Northern standard, although there was an issue with the footnote that they cited to. Rather than citing to footnote 26, which in the Court's tote bill, I believe is how you call it, opinion, they cited to footnote 6. However, that doesn't change the way that they evaluated that claim. And even though they referred up to their discrimination analysis, there is no clear violation in terms of how they applied that as standard. The Court noted, and as did my opponent, that there have been several cases in which the Court assumed but did not decide that the Burlington Northern standard applied to ADA and FMLA retaliation cases. I found it in Crouse v. American Stelzer from an ADA perspective, as well as Badoon v. Redding Hospital and EEOC v. Allstate in several different ramifications and variations. This case really comes on what we're talking about now, the retaliation claims. How does it not come down to you have to make a call beyond summary judgment or motion to dismiss? Mr. Steitl started in what, 2012? Yes, Mr. Steitl started in 2012. His annual bonuses were as high as $7,000, usually $5,000 to $7,000. And his salary increases anywhere from roughly 4.5 to 5% to 14%. So how is it not an adverse employment action to reduce his bonus in 2020 to $3,000 and his pay increase to 2.5% salary increase? That's significantly less than what he had gotten in the past. I agree with the Court's ramification of that. In the years where he received the 14% salary increase, I believe that was also a year in which he was promoted and received a new position. So the change in position was also responsible for some of that salary increase. That year was in the 2015 bonus award. But his first reduced bonus increase was September 2020, right? His first reduced bonus, well, from there, it was 4.9, 4.9. And then in 2019, he was awarded a 4.5% salary increase. And then in 2020, it was a 5%, and then it went to a 2.5%. 2020, it was, yeah, 2.5%. Yes, yes. And that was done while he was on FMLA leave, right? That was while he was on FMLA leave. His FMLA leave coincided with the normal period of time in which USLI awards bonus. And so if that is an adverse employment action, then the justifications were by Ms. Lacey that he was working on less complex cases. But in her evaluation report, she cast that in a very positive light. I mean, the quote, despite enjoying bodily injury claims more, Steudle has eagerly accepted and embraced the idea of receiving the majority of less complicated third-party claims, which allows other examiners to focus on higher exposure bodily injury claims. His willingness to put the team's interests above his personal interests shows he is a team player. So the later reason given for the lower bonus appears to be pretext. And then later she said, well, she lowered his bonus because he was less involved in the community. And yet in the evaluation for the third quarter, his, quote, involvement in community initiatives is remarkable. He is involved in many community initiatives and making a positive impact. I mean, how do you go from this guy is really he's the real top member of this team and he's taking on stuff that other people don't necessarily want to do, and he's doing it very quickly and efficiently. And yet, all of a sudden, right after he takes FMLA leave, he gets less of a bonus and less of a salary increase than he previously got in each of the past seven years. So I believe, Your Honor, that the lesser involvement began in 2021 and that she noted his involvement being an issue in his 2021 bonus, which, in fact, I'm sorry, in his 2021 review. I think I was floating from the third quarter of 2020 from what Lacey's evaluation, the glowing evaluation she gave of him. Am I wrong? Uh, I'm not, I'm not sure, Your Honor. I have it as a 2022 issue. Well, in 2020, I think, consistent with Judge Amber's question, his bonus was $3,000, his salary increase is $2.5. Correct. And at the same time, he was getting these good reviews from Ms. Lacey. So how do you reconcile that? Well, Ms. Lacey had, there was also a change in the team that she, he applied for and that he was on. So previously he had been on the casualty team. He went to the liquor liability team. So there was also a change in team, which also impacted the change in responsibilities that he had. That's a jury argument, isn't it? We're in summary judgment. You may be right. Maybe that would be accepted by a fact finder. But isn't that something that a fact finder should determine? I think the overall issue is that, even though there was a change year over year in terms of his bonuses, there's no record evidence to support that that change was not considered. Was that reason given at the time is for the lower bonus? Yes. And salary? Yes, Your Honor. In 2020? Yes, Your Honor. Despite the glowing report at the end of September, September 28, five, six weeks later, all of a sudden he's given less. And he argues this because he's on FMLA leave. But that glowing report to your term, the glowing report also notes that he had issues with his responsiveness, his daily time entries and managing his workload, all of which he admitted to during his deposition testimony. And did he have any of those issues in any of the past years in any of the reports? There was no criticism of it whatsoever for the prior seven years? No, there was no prior criticism of him. But again, he switched between teams. And so the types of claims that he was handling were different. Shouldn't a jury have to sort this out? Your Honor, I don't believe that they should. Because again, at the stage in terms of the adverse employment action, he is showing an adverse employment action just by comparing himself to himself. He does not have other comparator data to show that other people didn't have similar reductions in terms of their bonuses or their salary increases. So he doesn't have to go beyond himself. Yeah, in this case, under these facts, he doesn't need comparators, does he? Even if he does not have the comparators, he doesn't have record evidence other than his own opinion to refute the legitimate non-discriminatory reason that was offered to him. And his own opinion is not supported by any other record evidence. So his opinion, I think under the Third Circuit's own precedent, is not enough to create a jury issue. His opinion of what? His opinion of his own performance and the complexity of the cases that he was handling. I mean, essentially what he's relying on is what he actually got. I mean, we all work for, you know, compensation. Well, except right now during the shutdown. But if he's doing a good job and he's getting a really nice review, somehow it doesn't make sense, at least for 2020, that he is getting a demonstrably less bonus and a demonstrably less salary increase. And you're saying, you're now saying, well, there were some other concerns with him, but those weren't highlighted significantly, at least from what I saw in the briefing. And then secondly, that he was put into a new area of where, I guess you're saying that everybody in that area got lower pay increases, is that correct? There's no record evidence to support that they did not, yes. So what's in the record on its face would seem to indicate that somebody needs to make a decision as to whether this is an example of retaliation for having taken the FMLA leave. And I think for the 2020 bonus, it doesn't support that there would be FMLA retaliation because his performance, which had been documented in that performance evaluation, which I believe did have the documentation about these other issues in terms of his responsiveness, his daily time entry and managing his workload. He then goes out on that FMLA. That sounds like an argument to the jury or to the prior effect, whoever that is, court or jury. I mean, I just know when I was back at my old law firm, if you didn't get what you had gotten in prior years, you're going, uh-oh, somebody's not happy. And if they don't, and if I'm out on leave, I'm going, hmm, maybe I know the reason. Now, maybe that's the wrong reason. But why does that get sorted out without a trial? Well, I don't think that he has offered anything in terms of evidence other than his own opinion, again, that there was any additional reason. The facts are what he actually got. Right. And you're saying that there are reasons for that. He was put in another position. But how am I supposed to know that? Well, the record supports that in terms of what the summary judgment is. How is the district court supposed to make that determination? I mean, you're saying that's the reason and that's enough pretext? The reason was not just that he switched positions and there was a different manager who was not considering him. I'm just saying. It's within a month of his going on, within weeks of his going on FMLA leave, right? That he received the bonus determination? Yeah, right. Yes, but that is the same temporal time frame in which he would have received it every year, year in and year out. So there's nothing to show. That doesn't change. You can argue that reduces the probative value of the time frame, but it does not eliminate the probative value of it. They could argue, well, they timed it to coincide with when the normal bonuses are given so they wouldn't be so apparent what they're doing. That would be the argument to the jury as to the timing. The timing is in your favor, but it doesn't necessarily mean you win. The jury could still look at that reduction and say, this looks to me like they did not like the leave this guy was taking. And they did their best to cover the tracks, but they didn't cover them well enough. And this is retaliation. Or it could be. Yeah, I think that might be true if it weren't for the other document and performance issues that he admitted to and that we put in front of the court at summary judgment. I mean, he admitted that he had these issues in terms of his responsiveness, in terms of all of the things that she noted in his performance evaluations. So if it's standing alone, he had not had an admission that those issues were true. I think that it does go towards the idea that there was a pretext finding. But in this situation, that's not the case. He admits that the issues that she identified were correct. He just says, no, no, it must be something else, even though there's no record evidence to support that it was something else. You have no further questions? Thank you. OK, thank you, Your Honor. So why don't you start there in terms of what record evidence is there? And is his testimony enough? His testimony is enough in this case because they've admitted the bonus was lower in 20 and 21 than what he had received before. And we've pointed that out in our brief. The other issue they have about the time frame in 2021 was significantly longer. It was longer in 21, Judge. Focus on the comments in 2020. The comments in 2020 were, I believe, Judge Ambrose was talking about them. Those are, I believe, those are all the 2020 comments. Right, so is that enough to overcome the prima facie showing of retaliation? Well, if you look at if you look at the timeline, the review, I believe, was the 28th of September of 2020. He was out on FMLA October 3rd, got the bonus on November 19th. So within a few days of that review, which specifically addresses his struggles, which he had told the supervisor about in the context of his disability, I think that is more than enough to overcome their reasons and let a jury decide this. It's something something doesn't smell right about it. And I think I think a jury would realize that if they had this knowledge that he had these, I don't want to call them shortcomings, but these issues, as it were, in 2020. There were some issues, but they were not. They were not. They're not deserving of a lower bonus like this. I mean, he was, as Judge Ambrose alluded to, he was he was doing stellar according to the reviews. He was involved in the community. He was taking on work for others. And all of a sudden, as your honor pointed out about law firms, if your bonus is less, that's a warning sign. And that ties into one other thing I wanted to mention. Under the standard, whether or not a reasonable employee is dissuaded from bringing a complaint under the Burlington Northern Standard, less money is easily going to satisfy that. I think it would be hard to find a case where a bonus or a raise was less, and it would not satisfy that standard. That's one point I did want to make. And I would encourage the court to apply that standard, because the Third Circuit has never definitively done that. This is a great chance to do it. But I do think this case needs to be sent back for trial. Thank you.